IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICKI D. SCOTT,<br><br>    Plaintiff,<br><br>v.<br><br>SAXON MORTGAGE SERVICES, INC.,<br><br>    Defendant.<br>_____/ | No. C -13-03085 EDL<br><br>**ORDER GRANTING WITH LEAVE TO AMEND IN PART DEFENDANT SAXON MORTGAGE SERVICES' MOTION TO DISMISS** |

Before the Court is Defendant Saxon Mortgage Services' Motion to Dismiss. On October 8, 2013, the Court held a hearing on Defendant's Motion and for the reasons stated at the hearing and in this Order, Defendant's Motion is granted with leave to amend in part.

**Allegations from the complaint**

Plaintiff makes the following allegations in her first amended complaint. On December 19, 2006, Plaintiff obtained a mortgage from New Century Mortgage in the amount of $480,387. First Am. Compl. ("FAC") ¶ 2; Request for Judicial Notice ("RJN") Ex. 1.[1] The loan was secured by a Deed of Trust against the real property located at 6004 Old Quarry Loop in Oakland. Id.

In March 2007, New Century Mortgage Company sold Plaintiff's loan to Morgan Stanley Bank, which immediately sold servicing rights to Defendant Saxon Mortgage Services. FAC ¶ 3.

---

[1] In support of its motion to dismiss, Defendant filed a request for judicial notice of certain documents. Under Federal Rule of Civil Procedure 201(b), a "judicially noticed fact must be one not subject to reasonable dispute in that it is either: (1) generally known within the territorial jurisdiction of the trial court; or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Furthermore, a court "shall take judicial notice if requested by a party and supplied with the necessary information." See Fed. R. Civ. P. 201(d); Mullis v. United States Bank, 828 F.2d 1385, 1388 n. 9 (9th Cir. 1987). A court may also take judicial notice of matters of public record. Lee v. City of L.A., 250 F.3d 668, 689 (9th Cir.2001). Here, Plaintiff does not challenge the authenticity of the documents contained in Request for Judicial Notice, and they are judicially noticeable under Federal Rule of Evidence 201.

After selling Plaintiff's loan, New Century filed for bankruptcy and took two of Plaintiff's mortgage payments without properly crediting them to her loan account. Id.

Plaintiff suffers from asthma, experienced extreme respiratory problems, and in April 2007, she became very ill. FAC ¶ 5. Plaintiff alleges that her illness was caused by mold in her home, so she moved out of the house and into a hotel. Id. During this time, Plaintiff was terminated from her employment. Id.

Thereafter, Plaintiff returned to her home and resumed efforts to secure proper credit for the two payments made to New Century. FAC ¶ 6. Because Plaintiff failed to make payments, a Notice of Default was recorded against the property on October 15, 2007. RJN Ex. 2. After receiving foreclosure information, in 2008, Plaintiff filed bankruptcy in an effort to save her home. Id. On or about June 23, 2009, after the automatic bankruptcy stay was lifted, her home was sold at a foreclosure sale to Deutsche Bank National Trust Company, as Trustee for Morgan Stanley ABS Capital I Inc. Trust 2007-NC3. FAC ¶ 6; RJN Ex. 3. Plaintiff vacated the property on August 16, 2012. FAC ¶ 6.

Plaintiff filed this action on July 3, 2013. After Defendant filed a motion to dismiss, Plaintiff filed a first amended complaint on August 12, 2013. Defendant filed a second motion to dismiss, seeking to dismiss all of Plaintiff's claims.

**Legal standard**

A complaint will survive a motion to dismiss if it contains "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007)). The reviewing court's "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." Lazy Y Ranch LTD v. Behrens, 546 F.3d 580, 588 (9th Cir. 2008).

A court need not, however, accept as true the complaint's "legal conclusions." Iqbal, 129 S. Ct. at 1949. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 1950. Thus, a reviewing court may begin "by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of

truth." Id.

Courts must then determine whether the factual allegations in the complaint "plausibly give rise to an entitlement of relief." Id. Though the plausibility inquiry "is not akin to a probability requirement," a complaint will not survive a motion to dismiss if its factual allegations "do not permit the court to infer more than the mere possibility of misconduct . . . ." Id. at 1949 (internal quotation marks omitted) & 1950. That is to say, plaintiffs must "nudge[] their claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

**Discussion**

**1.  Plaintiff's first claim for violation of California Business and Professions Code section 17200 predicated on violation of California Civil Code section 2923.5 and Plaintiff's ninth claim for violation of California Civil Code section 2923.5 are dismissed without leave to amend**

Plaintiff claims that Defendant violated California Civil Code section 2923.5, which "concerns the crucial first step in the foreclosure process: The recording of a notice of default as required by section 2924." Mabry v. Superior Court, 185 Cal. App. 4th 208, 221 (2010). Under section 2923.5, a lender generally may not file a notice of default until thirty days after it has contacted "the borrower by phone or in person to 'assess the borrower's financial situation and explore options for the borrower to avoid foreclosure.'" Id. (quoting Cal. Civ. Code § 2923.5(a)(2)). "If section 2923.5 is not complied with, then there is no valid notice of default, and without a valid notice of default, a foreclosure sale cannot proceed." Id. at 223.

Section 2923.5 did not become operative until September 2008, long after the Notice of Default was recorded in October 2007. RJN Ex. 2. Therefore, Plaintiff's claim for violation of that section fails. Further, the remedy for a failure to comply with section 2923.5 is "to postpone the sale until there has been compliance with" the statute. Mabry, 185 Cal.App.4th at 223 (citing Cal. Civ. Code § 2924g(c)(1)(A)). Even if the statute applied, Plaintiff's home has already been sold, so no remedy is available. In addition, Plaintiff has not opposed dismissal of these claims in the opposition. Therefore, Plaintiff's first and ninth claims are dismissed without leave to amend.

**2.  Plaintiff's second claim for breach of good faith and fair dealing is dismissed with leave to amend**

The covenant of good faith is an implied term arising out of a contract itself. Kim v. Regents

3

1  of Univ. of Cal., 80 Cal.App.4th 160, 164 (2000). "The existence of a contractual relationship is
2  thus a prerequisite for any action for breach of the covenant." Id. "It is universally recognized the
3  scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and
4  express terms of the contract." Carma Developers (California), Inc. v. Marathon Development
5  California, Inc., 2 Cal.4th 342, 373 (1992) (stating that an implied covenant of good faith and fair
6  dealing cannot contradict the express terms of a contract).

Plaintiff alleges that the parties "stood in the relationship of Consultant and Client," and that Plaintiff was in a "vulnerable and dependant position, of which Defendants were aware. FAC ¶ 38. Plaintiff alleges that Defendants breached the duty of good faith and fair dealing in handling her mortgage. Id. This claim appears to be based, at least in part, on pre-contract conduct such as failing to make certain disclosures and placing Plaintiff in a loan that she could not afford. FAC ¶¶ 6-18. Those allegations do not support this claim because they occurred prior to the loan contract. Further, those allegations could not support a claim against Defendant Saxon, which was not involved in the loan origination. Thus, to the extent that this claim is based on conduct before or at loan origination, it is dismissed with prejudice as to Defendant Saxon.

However, Plaintiff has alleged some post-contract conduct by Saxon such as attempts by Plaintiff to negotiate a loan modification agreement and Defendant's failure to properly credit payments after the servicing rights to her loan were sold to Defendant. FAC ¶¶ 3-4. At the hearing, Plaintiff clarified that Defendant did not offer her a loan modification agreement, although she qualified for one. She further stated that she showed Defendant evidence of two payments totaling more than $5,000, but that Defendant did not credit her account. She also stated that she complained to several federal and state agencies about Defendant, and that she received a document from the Federal Reserve regarding an independent mortgage review that found misconduct by Defendant and refunded her two payments totaling approximately $4,000. These allegations are not in the first amended complaint and no Federal Reserve document is attached to either the original complaint or the first amended complaint. Defendant's motion to dismiss this claim is granted with leave to amend regarding post-contract conduct.

**3.    Plaintiff's third claim for slander of title is dismissed without leave to amend**

4

"The elements of the tort [of slander of title] ... have traditionally been held to be publication, falsity, absence of privilege, and disparagement of another's land which is relied upon by a third party and which results in a pecuniary loss." Smith v. Commonwealth Land Title Ins. Co., 177 Cal.App.3d 625, 630 (1986) (quoting Appel v. Burman, 159 Cal.App.3d 1209, 1214 (1984)); Jackson v. Ocwen Loan Servicing, LLC, 2010 WL 3294397, at *4 (E.D. Cal. Aug. 20, 2010) ("Under California law, to state a claim for slander of title, the plaintiff must establish: 1) a publication; 2) which is without privilege or justification; 3) which is false; and 4) which causes direct and immediate pecuniary loss.").

Any notice or communication that issued in the course of performing duties related to non-judicial foreclosure sale is privileged and not actionable. See Cal. Civ. Code § 2924(d); Richards v. Bank of America, 2010 WL 3222151 (N.D. Cal. Aug. 13, 2010) ("However, any notice or communication that issued in the course of performing duties related to the non-judicial foreclosure sale is privileged and not actionable."). Here, Plaintiff alleges that Defendants recorded a Notice of Default against her property and continued to record documents, such as a Notice of Trustee's Sale, even though Plaintiff was attempting to comply with mortgage assistance programs. FAC ¶¶ 43-44. Plaintiff alleges that Defendants failed to comply with the statutory rules governing foreclosure and with Civil Code § 2923.5. FAC ¶¶ 45-46. Thus, Plaintiff's claim is based solely on allegations that Defendant is liable for slander of title by recording notices or taking steps toward foreclosure sale, and that conduct is not actionable. Further, Plaintiff did not oppose dismissal of this claim in her opposition to Defendant's motion. Plaintiff's third claim is dismissed without leave to amend.

**4.     Plaintiff's fourth claim for "alter ago liability" is dismissed without leave to amend**

Plaintiff alleges that all Defendants are the alter ego of Defendant Saxon, so all Defendants should be held jointly liable for claims against any one of the Defendants. FAC ¶ 50. Plaintiff also alleges that the foreclosing Defendants had substantial discretionary power affecting Plaintiff's rights. FAC ¶ 51.

Plaintiff does not allege any specific wrongdoing by Saxon in this claim, and it appears to be simply a theory of damages. Further, the allegations in support of this claim are conclusory, and Plaintiff has not pled any facts to show that Saxon, who as the loan servicer, was an agent, not a

5

principal, was the subsidiary or parent of any of the other Defendants. Further, as an agent, Saxon could not be liable for the acts of the principal. See Plumleigh v. City of Santa Ana, 754 F. Supp. 2d 1201, 1205 (C.D. Cal. 2010) ("However, it is well-established under California agency law that an agent is not liable for the independent acts of its principal."). In addition, Plaintiff did not oppose dismissal of this claim in her opposition. Therefore, Plaintiff's fourth claim is dismissed without leave to amend.

**5. Plaintiff's fifth claim for breach of contract is dismissed without leave to amend**

In order to state a breach of contract claim, a plaintiff must plead the following elements: "the existence of the contract, performance by the plaintiff or excuse for nonperformance, breach by the defendant, and damages." First Commercial Mortgage Co. v. Reece, 89 Cal. App. 4th 731, 745 (2001). Plaintiff alleges that in June 2011, she attempted to obtain a loan modification agreement with Defendant, but that Defendant refused to agree to a reasonable debt reduction program. FAC ¶¶ 53, 55. Although Plaintiff also alleges that Defendant breached its contractual obligations under the loan modification agreement, FAC ¶ 54, at the hearing she clarified that there was no such agreement. Therefore, it would be futile to permit amendment of this claim, and Plaintiff's breach of contract claim is dismissed without leave to amend.

**6. Plaintiff's sixth claim for unjust enrichment is dismissed with leave to amend**

Plaintiff alleges that by their wrongful acts and omissions, Defendants have been unjustly enriched at the expense of Plaintiff. FAC ¶ 59. Plaintiff seeks restitution and disgorgement of profits. FAC ¶ 60. The elements of unjust enrichment are: (1) receipt of a benefit; and (2) the unjust retention of the benefit at the expense of another. Peterson v. Cellco P'ship, 164 Cal.App.4th 1583, 1593 (2008).

Here, Plaintiff's allegations are conclusory as to how Defendant received an unjust benefit from Plaintiff. Plaintiff does not respond in her opposition to the argument that she has failed to state a claim. However, Plaintiff seeks leave to convert the claim to one for restitution. A restitution claim requires pleading of a receipt of a benefit and the unjust retention of a benefit at the expense of another. See Reyes v. Wells Fargo Bank, 2011 U.S. Dist. LEXIS 2235 at *53-54 (N.D. Cal. 2011). Therefore, Plaintiff's unjust enrichment claim is dismissed with leave to amend if she can do so in

6

good faith.

**7. Plaintiff's seventh claim for violation of California Business and Professions Code section 17200 is dismissed without leave to amend**

California Business and Professions Code section 17200, et seq., prohibits "any unlawful, unfair or fraudulent business act or practice." "This cause of action is derivative of some other illegal conduct or fraud committed by a defendant, and a plaintiff must state with reasonable particularity the facts supporting the statutory elements of the violation." Lomboy v. SCME Mortgage Brokers, 2009 WL 1457738, at *6 (N.D. Cal. May 26, 2009) (internal citation omitted).

This claim is predicated on California Civil Code sections 2923.5, 2923.6, 1788.17 and 1572. FAC at 21. Plaintiff alleges that Defendant engaged in fraudulent business practices including: (1) promising homeowners loan modifications that Defendants have no intention of providing; (2) routinely issuing Notices of Default without complying with the requirements of Civil Code section 2923.5; (3) repeatedly demanding documentation from borrowers with knowledge or in reckless disregard of the fact that the documentation had already been provided; (4) continuing to demand and accept mortgage payments after foreclosure; and (5) intentionally misleading Plaintiff into believing that a foreclosure had not occurred. FAC ¶ 64. As stated above, to the extent that this claim is based on violation of section 2923.5, it is dismissed without leave to amend.

With respect to the other bases for this claim, Plaintiff has not alleged facts with particularity, or identified which Defendant did what, when the acts or omissions took place or how she was harmed by them. Thus, this claim is conclusory. In her opposition, Plaintiff argues that she has pled a valid claim for fraud, but her complaint does not contain a claim for fraud and the only reference to fraud is this section 17200 claim. Because Plaintiff has not pled this claim with particularity, it fails as a fraud claim as well. Plaintiff's section 17200 claim is dismissed with leave to amend, but not as to the violation of Civil Code section 2923.5.

**8. Plaintiff's eighth claim for predatory lending and violation of TILA is dismissed without leave to amend**

Plaintiff alleges that predatory lending is defined as "anyone secured by real estate that shares well known common characteristics that result in unfair and deceptive practices under California business and professions code section 17200." FAC ¶ 66. To the extent that Plaintiff

7

bases this claim on section 17200, she must plead that claim with particularity, but has not done so. Also, the section 17200 claim is untimely. See Cal. Bus. & Prof. Code § 17208 (four year statute of limitations). Here, Plaintiff alleges that the loan originated in December 2006, but this case was not filed until 2013.

Further, Plaintiff's allegations in this claim appear to go to loan origination, so the claim should be dismissed against Defendant, which was not involved in loan origination. See Emery v. Visa Int'l Serv. Ass'n, 95 Cal.App.4th 952, 960 (2002) ("We need go no further than to remind plaintiff that his unfair practices claim under section 17200 cannot be predicated on vicarious liability. 'The concept of vicarious liability has no application to actions brought under the unfair business practices act.' A defendant's liability must be based on his personal 'participation in the unlawful practices' and 'unbridled control' over the practices that are found to violate section 17200 or 17500.") (internal citation omitted). In addition, loan servicers like Defendant are generally not liable under TILA. Harvick v. American Home Mortgage Servicing, Inc., 2013 WL 3283523, at *4 (E.D. Cal. June 27, 2013) ("Thus, '[s]ervicers of consumer obligations are not to be treated as assignees for purposes of imposing liability unless they are also the owner of the obligation.'").

Moreover, a TILA claim for damages must be brought within one year from the date of the occurrence of the violation, and in this case, any violation occurred no later than the loan origination in December 2006. See 15 U.S.C. § 1640(e); King v. California, 784 F.2d 910, 915 (9th Cir. 1986) (" . . . as a general rule the limitations period starts at the consummation of the transaction."). Equitable tolling can apply to the TILA limitations period, but Plaintiff has made no allegations to support equitable tolling. See Santa Maria v. Pacific Bell, 202 F.3d 1170, 1178 (9th Cir. 2000) ("Equitable tolling may be applied if, despite all due diligence, a plaintiff is unable to obtain vital information bearing on the existence of his claim."). At the hearing, Plaintiff stated that she believed that she had been wronged long before allegedly receiving the Federal Reserve document in 2012 and therefore had filed numerous complaints with various entities. Finally, Plaintiff did not oppose dismissal of this claim in her opposition. For all of these reasons, Plaintiff's eighth claim is dismissed without leave to amend.

**9. Plaintiff's tenth claim for defamation and eleventh claim for false light are dismissed without leave to amend**

Defamation "involves the intentional publication of a statement of fact that is false, unprivileged, and has a natural tendency to injure or which causes special damage." Smith v. Maldonado, 72 Cal.App.4th 637, 645 (1999). Similarly, "to state a claim for the tort of false light invasion of privacy plaintiff must plead that (1) the defendant caused to be generated publicity of the plaintiff that was false or misleading, and (2) the publicity was offensive to a reasonable person." Pacini v. Nationstar Mortg., LLC, 2013 WL 2924441, at *9 (N.D. Cal. June 13, 2013).

Plaintiff alleges that by making false statements to third party credit reporting agencies, Defendants made false allegations that have damaged Plaintiff's credit and her reputation. FAC ¶ 78. Plaintiff alleges that at the time the statements were made, Defendants knew them to be false, and intended Plaintiff to be injured. FAC ¶ 79. Plaintiff alleges that Defendants knew or should have known that the statements were false. FAC ¶ 81. Plaintiff alleges that the third parties receiving the statements reasonably understood the statements to mean that Plaintiff was a high credit risk. FAC ¶ 82. Plaintiff alleges that Defendant failed to exercise reasonable care in making those statements. FAC ¶ 83. In addition, Plaintiff alleges that in making these statements, Defendants painted Plaintiff in a false light, and knew that the false light created by the publication would be highly offensive to a reasonable person. FAC ¶¶ 88-89.

However, a consumer cannot bring a claim for defamation against any person who furnishes information to a credit reporting agency. See 15 U.S.C. § 1681h(e) ("Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such consumer."). Plaintiff's allegations are based entirely on alleged statements made to credit reporting agencies, and there are no allegations that the report was made with malice or willful intent. In addition,

9

1  Plaintiff's admission in the complaint that she failed to pay her mortgage payments is inconsistent
2  with her claim that the reporting about that was defamatory or in a false light. Plaintiff also did not
3  oppose dismissal of this claim in her opposition. Thus, for all of these reasons, Plaintiff's
4  defamation claim and false light claims are dismissed without leave to amend.

**10.  Plaintiff's twelfth claim to void or cancel assignment of the deed of trust and the thirteenth claim for cancellation of a voidable contract are dismissed without leave to amend**

In her twelfth claim, Plaintiff alleges that assignment of the deed of trust is invalid because Defendants did not have standing or legal authority to assign the deed of trust. FAC ¶ 96. In her thirteenth claim, Plaintiff alleges that the deed of trust is voidable because MERS failed to comply with state tax laws and conducted business in California when it was not registered in the state. FAC ¶¶ 99-103. Plaintiff alleges that MERS had no authority to execute the assignment of the deed of trust, or enter into a contract with Plaintiff. FAC ¶ 104.

With respect to MERS' authority, the deed of trust that Plaintiff executed specifically nominated MERS to act as the nominee for the beneficiary under the deed of trust. RJN Ex. 1 at 2. The deed of trust states that MERS has the right to foreclose and sell the property. Id.; see also Gomes v. Countrywide Home Loans, Inc., 192 Cal.App.4th 1149, 1157 (2011) ("Gomes's agreement that MERS has the authority to foreclose thus precludes him from pursuing a cause of action premised on the allegation that MERS does not have the authority to do so. . . ."). Therefore, Plaintiff's argument that MERS lacks authority to foreclose does not support her claim.

Further, Plaintiff's argument that MERS' involvement was a violation of Revenue and Taxation Code section 23304.5 and Civil Code section 2932.5 has been rejected by courts where MERS is authorized as set forth in the deed of trust. See Revenue & Taxation Code § 23304.5 ("A party that has the right to declare a contract to be voidable pursuant to Section 23304.1 may exercise that right only in a lawsuit brought by either party with respect to the contract in a court of competent jurisdiction and the rights of the parties to the contract shall not be affected by Section 23304.1 except to the extent expressly provided by a final judgment of the court, which judgment shall not be issued unless the taxpayer is allowed a reasonable opportunity to cure the voidability under Section 23305.1. If the court finds that the contract is voidable under Section 23304.1, the

10

court shall order the contract to be rescinded. However, in no event shall the court order rescission of a taxpayer's contract unless the taxpayer receives full restitution of the benefits provided by the taxpayer under the contract."); Cal. Civil Code § 2932.5 ("Where a power to sell real property is given to a mortgagee, or other encumbrancer, in an instrument intended to secure the payment of money, the power is part of the security and vests in any person who by assignment becomes entitled to payment of the money secured by the instrument. The power of sale may be exercised by the assignee if the assignment is duly acknowledged and recorded."); Frazier v. Aegis Wholesale Corp., 2011 WL 6303391, at *10 (N.D. Cal. Dec. 16, 2011) (rejecting argument that § 2932.5 claim can rest on allegation that MERS is not authorized). In addition, section 2932.5 does not apply to deeds of trust. See Caballero v. Bank of America, 468 Fed. Appx. 709, 710 (9th Cir. 2012) ("The district court correctly held that California Civil Code section 2932.5 does not apply to deeds of trust.").

In her opposition, Plaintiff argues that California Corporations Code section 191(c)(7) does not apply to MERS. However, section 191(d) expressly exempts corporations from "the enforcement of any loans by trustee's sale." Cal. Corp. Code § 191(d) ("Without excluding other activities that may not constitute transacting intrastate business, any foreign lending institution, including, but not limited to: any foreign banking corporation, any foreign corporation all of the capital stock of which is owned by one or more foreign banking corporations, any foreign savings and loan association, any foreign insurance company or any foreign corporation or association authorized by its charter to invest in loans secured by real and personal property, whether organized under the laws of the United States or of any other state, district or territory of the United States, shall not be considered to be doing, transacting or engaging in business in this state solely by reason of engaging in any or all of the following activities either on its own behalf or as a trustee of a pension plan, employee profit sharing or retirement plan, testamentary or inter vivos trust, or in any other fiduciary capacity: . . . (3) The ownership of any loans and the enforcement of any loans by trustee's sale, judicial process or deed in lieu of foreclosure or otherwise."); Perlas v. MERS, 2010 WL 3079262, at *7 (N.D. Cal. Aug. 6, 2010) ("Second, California courts have held that an unregistered corporation, upon registering, is "restored to full legal competency and [has] its prior transactions given full effect." Gatto, 49 Cal.App.4th at 1741, 57 Cal.Rptr.2d 600. As of July 21,

11

1  2010, MERS is registered to conduct intrastate business in the State of California. See Dkt. # 53.

2  Therefore, MERS is entitled to have "its prior transactions given full effect." It would be entirely

3  contrary to California law to permit Plaintiffs to maintain a UCL action where MERS has received

4  the benefit of this retroactive validation."). Thus, Plaintiff's claims that MERS' involvement was

5  improper is dismissed without leave to amend.

6      Defendant argues that tender is required to sustain this claim and that Plaintiff has failed to

7  allege tender. "A valid and viable tender of payment of the indebtedness owing is essential to an

8  action to cancel a sale under a deed of trust." Karlsen v. American Sav. & Loan Assn., 15

9  Cal.App.3d 112, 117 (1971); see also Arnolds Management Corp. v. Eischen, 158 Cal.App.3d 575,

10  578 (1984) ("It is settled that an action to set aside a trustee's sale for irregularities in sale notice or

11  procedure should be accompanied by an offer to pay the full amount of the debt for which the

12  property was security."). California district courts apply the tender rule in examining wrongful

13  foreclosure claims. See, e.g., Anaya v. Advisors Lending Group, 2009 WL 2424037, at *10 (E.D.

14  Cal. Aug. 3, 2009) ("Plaintiff offers nothing to indicate that she is able to tender her debt to warrant

15  disruption of non-judicial foreclosure"). The application of the "tender rule" prevents "a court from

16  uselessly setting aside a foreclosure sale on a technical ground when the party making the challenge

17  has not established his ability to purchase the property." Williams v. Countrywide Home Loans,

18  1999 WL 740375, at *2 (N.D. Cal. Sept. 15, 1999); see also Benham v. Aurora Loan Servs.,

19  C-09-2059 SC (N.D. Cal. Oct. 1, 2009) (granting a motion to dismiss a wrongful foreclosure claim

20  because the plaintiff failed to allege a credible tender offer).

21      "The rules which govern tenders are strict and are strictly applied." Nguyen v. Calhoun, 105

22  Cal.App.4th 428, 439 (2003). "The tenderer must do and offer everything that is necessary on his

23  part to complete the transaction, and must fairly make known his purpose without ambiguity, and the

24  act of tender must be such that it needs only acceptance by the one to whom it is made to complete

25  the transaction." Gaffney v. Downey Savings & Loan Assn., 200 Cal.App.3d 1154, 1165 (1988)

26  ("An offer of partial payment is of no effect.") (internal quotation marks omitted). The debtor bears

27  "responsibility to make an unambiguous tender of the entire amount due or else suffer the

28  consequence that the tender is of no effect." Gaffney, 200 Cal.App.3d at 1165; see also Aguilar v.

1  Bocci, 39 Cal. App. 3d 475, 478 (1974) (stating that a trustor cannot "quiet title without discharging
2  his debt. The cloud upon his title persists until the debt is paid. He is entitled to remain in
3  possession, but cannot clear his title without satisfying his debt."); Karlson, 15 Cal.App.3d at 117
4  ("'. . . It is apparent from the general tenor of the decisions that an action to set aside the sale,
5  unaccompanied by an offer to redeem, would not state a cause of action which a court of equity
6  would recognize.'") (quoting Leonard v. Bank of America, 16 Cal.App.2d 341, 344 (1936)). An
7  offer of tender must be "unconditional" to be valid. Arnolds Management Corp. v. Eischen, 158
8  Cal. App. 3d 575, 580 (1984).

9        Plaintiff argues that the tender rule does not apply here because she alleges that the
10 foreclosure sale is void, not voidable. Plaintiff argues that her case is like Dimock v. Emerald
11 Properties, LLC, 81 Cal.App.4th 868 (2000). In Dimock, the court held that since the beneficiary of
12 the deed of trust recorded the document that substituted the new trustee for the former trustee, and
13 the substitution of the new trustee was never subject to any further recorded substitution by the
14 beneficiary, the new trustee had sole power to convey the property. The Dimock court further held
15 that since the new trustee had sole power to convey the property, the former trustee's conveyance of
16 the property to the new buyer after the foreclosure sale was void, and not merely voidable. Plaintiff
17 argues that she has made similar allegations here because she alleges that MERS lacked beneficial
18 interest in the deed of trust to transfer to Defendant. However, as stated above, Plaintiff's allegation
19 about MERS' authority is not well-taken.

20       Further, this case is not like Onofrio v. Rice, 55 Cal.App.4th 413, 424 (1997), in which the
21 plaintiff sought to rescind a foreclosure sale because the foreclosure consultant promised the
22 plaintiff that he would help to avoid foreclosure and then purchased the plaintiff's home at the
23 foreclosure sale. The court found that it would be inequitable under those facts to require tender.
24 There are no such allegations in this case that would make a tender requirement inequitable. Thus,
25 Plaintiff's twelfth and thirteenth claims are dismissed without leave to amend.

26 **Conclusion**

27       Defendant's Motion to Dismiss is granted with leave to amend on some but not all claims as
28 stated above. Any amended complaint must be filed no later than October 25, 2013. As stated at the

13

hearing, the deadline to serve the other Defendants in this case is November 8, 2013. A further case management conference is set for December 17, 2013, and case management conference statements shall be filed no later than December 10, 2013.

**IT IS SO ORDERED.**

Dated: October _10_, 2013



_____
ELIZABETH D. LAPORTE
United States Magistrate Judge

14

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

VICKI D. SCOTT,

        Plaintiff,

v.

SAXON MORTGAGE SERVICES, INC. et al,

        Defendant.
                                        /

Case Number: CV13-03085 EDL

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on October 10, 2013, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Vicki D. Scott
5930 MacArthur Boulevard, #B
Oakland, CA 94605

Dated: October 10, 2013

                                      Richard W. Wieking, Clerk
                                      By: Lisa R Clark, Deputy Clerk